UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DR. LISA A. BLEDSOE                      )
And GARY BLEDSOE,                        )
                                         )
          Plaintiffs,                   )
                                         )
        v.                                  )   CASE NO. 1:04-cv-1584-DFH-TAB
                                         )
STATE FARM FIRE AND                      )
CASUALTY COMPANY,                        )
                                         )
          Defendant.                    )


ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT


I.    *Introduction*

      The issue in this case is whether a standard "non-owned auto exception" to a coverage exclusion in a business liability insurance policy applies to a vehicle owned by the sole proprietor of the insured business.  As explained below, the court predicts that Indiana courts would not distinguish between the sole proprietorship and its owner, so that a vehicle owned by the business owner would be deemed owned by the insured business.  The result is that the business liability policy does not provide coverage for the use of the owner's vehicle in the course of the business.  Instead, the only applicable coverage is that provided by the business owner's personal automobile insurance policy.

In this case, plaintiffs Dr. Lisa and Gary Bledsoe seek to execute an agreed judgment entered against Dr. Thomas Miller's medical practice in the amount of $275,000.   The agreed judgment settled claims arising from an automobile accident between Dr. Bledsoe and Dr. Miller's son, Aaron Miller, who was running errands for his father's medical practice at the time of the accident.   Dr. Miller's medical practice was insured by a State Farm business liability policy for up to $500,000.  Plaintiffs now seek to satisfy their agreed judgment through this policy.

Defendant removed to this court on the basis of diversity jurisdiction under 28 U.S.C. § 1332.  Both sides have moved for summary judgment on whether the policy provides coverage for the vehicle driven by Aaron Miller.  As explained below, the undisputed facts show that the business policy does not provide coverage.  Defendant's motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied.

II.     *Summary Judgment Standard*

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The motion should be granted so long as no rational fact finder could return a verdict in favor of the non-moving parties.  See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Thus, a court's ruling on a motion for summary judgment is akin to that

of a directed verdict.  The question for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

The fact that both sides have filed cross-motions for summary judgment does not alter the applicable standard; the court must consider each motion independently and will deny both motions if there is a genuine issue of material fact.  *E.g.*, *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).  A factual issue is material if resolving the issue may influence the outcome of the suit under governing law.  *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).

III.    *Undisputed Facts*

On September 7, 2000, Dr. Lisa Bledsoe and Aaron Miller, the minor son of Dr. Thomas Miller and Mrs. Denise Miller, were involved in an automobile accident in Noblesville, Indiana.  Cplt. ¶ 2.  At the time of the accident, Aaron Miller was running an errand for his father's medical practice.  Cplt. ¶ 3.  Aaron Miller drove a vehicle titled and registered to his parents at their home address in Noblesville, Indiana.  Cplt. ¶ 1.  The Millers paid insurance, registration, and other costs for the vehicle from their home address.  Pl. Ex. B at 22-23.  The Millers bought liability insurance covering the vehicle from State Farm Automobile Insurance Company with a coverage limit of $100,000.  Cplt. ¶ 5.

Dr. Bledsoe sustained physical injuries in the accident, and her automobile was a total loss. Cplt. ¶ 4. On May 11, 2001, Dr. Bledsoe and her husband Gary sued Dr. Thomas Miller, Mrs. Denise Miller, and Aaron Miller in state court. Cplt. ¶ 6. The parties ultimately settled, entering into a Consent to Entry of Agreed Judgment in April 2004. The state court issued an Order Approving Consent to Entry of Agreed Judgment. Final judgment was entered against Dr. Miller, Mrs. Miller, and Aaron Miller in their "personal" capacities for $125,000 and against "Miller, Thomas W. Dr., 485 Sheridan Road, Noblesville," Indiana (the address of his medical practice) for $275,000. Cplt. ¶ 9. The $125,000 "personal" judgment against the Millers has been satisfied.

At the time of the accident, Dr. Miller operated his medical practice as a sole proprietorship. Def. Ex. 1 at 9, 26-27. State Farm Fire and Casualty Company insured Dr. Miller's medical practice in Noblesville, Indiana under Policy No. 94-59-1122-3 ("the Business Policy"). The Business Policy provided liability protection up to a coverage limit of $500,000. Cplt. ¶ 5. State Farm informed the Millers during their settlement negotiations with the Bledsoes that it was reserving its right to deny coverage under the Business Policy. See Def. Ex. 3.

The relevant terms of the Business Policy are as follows. The Declarations page designates Dr. Thomas W. Miller, 485 Sheridan Road, Noblesville, Indiana, as the "Named Insured." Pl. Ex. E. The Business Policy states that the words "you" and "your" refer to the Named Insured listed in the Declarations and to any

other person or organization qualifying as a Named Insured under the policy.  Pl. Ex. E at 1.

The Business Policy contains the following coverage clause:  "We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies."  Pl. Ex. E at 20.  The Business Policy also contains coverage exclusions, and some exceptions to those exclusions.  Two coverage exclusions are relevant here.  First, under Coverage L, Exclusion No. 7 ("Business Liability Exclusion"), coverage does not apply to "bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any . . . auto . . . owned or operated by . . . any insured."  *Id.* at 22.  The Business Liability Exclusion contains the following limitation that reinstates coverage in certain circumstances:  "This exclusion does not apply to . . . bodily injury or property damage arising out of the use of any non-owned auto in your business by any person other than you."  *Id.* at 23.  This provision is often referred to as the "non-owned auto exception."  The policy defines "non-owned auto" as "any auto you do not own, lease, hire, or borrow which is used in connection with your business."  *Id.* at 32.  Second, under Coverage M, Exclusion No. 7 ("Medical Payments Exclusion"), the policy states in relevant part that "we will not pay medical expenses for bodily injury . . . excluded under Business Liability Exclusions; arising out of the use of any non-owned auto."  *Id.* at 25.

The Bledsoes filed suit against State Farm in state court to execute the $275,000 agreed judgment against Dr. Miller's medical practice under the Business Policy.  State Farm removed the action to this court.  After discovery, both sides filed motions for summary judgment.

IV.    *Discussion*

The issue of law is whether the Business Policy provides insurance coverage for the unsatisfied portion of the judgment against Dr. Thomas Miller.   The material facts of this case are not in dispute.  The parties agree that, unless the non-owned auto exception applies to plaintiffs' claims, the Business Liability Exclusion and Medical Payments Exclusion bar coverage.  The controlling issue is therefore whether the vehicle Aaron was driving was "any auto you do not own, lease, hire or borrow which is used in connection with your business."  If the answer is yes, then  there is no coverage under the Business Policy.  If the answer is no, then there is coverage under the Business Policy.  The issue is governed by Indiana law.

Defendant State Farm argues that because Dr. Miller operated his practice as a sole proprietor, there is no distinction for purposes of the auto ownership and insurance coverage between his supposed "personal" capacity and his "professional" capacity.  Plaintiffs contend that the court should regard Dr. Miller and his practice as separate legal entities for purposes of determining coverage. Plaintiffs also contend that the non-owned auto exception should apply since Mrs.

Miller was a co-owner of the vehicle and is not a physician, so that she is barred by Indiana statute from practicing medicine. The court agrees with State Farm and holds that the Business Liability Exclusion and Medical Payments Exclusion bar plaintiffs' claims because Indiana courts would treat Dr. Miller and his practice as the same legal entity for purposes of the non-owned auto exception.

A.     *Governing Legal Principles*

The interpretation of an insurance policy "'involves the same rules of construction and interpretation as other contracts.'" *Myles v. General Agents Ins. Co.*, 197 F.3d 866, 868 (7th Cir. 1999), quoting *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 223 (Ind. App. 1997). Because contract interpretation is a matter of law, cases involving the interpretation of insurance contracts are often appropriate for summary judgment. *Puryear v. Progressive Northern Ins. Co.*, 790 N.E.2d 138, 140 (Ind. App. 2003).

The application of unambiguous language in an insurance contract to undisputed facts presents a question of law. *Harden v. Monroe Guar. Ins. Co.*, 626 N.E.2d 814, 817 (Ind. App. 1993). An unambiguous insurance policy must be enforced according to its terms, even those that limit an insurer's liability. *Allstate Ins. Co. v. Hammond*, 759 N.E.2d 1162, 1168 (Ind. App. 2001). An insurance contract will be deemed ambiguous only if reasonable people would differ as to the meaning of its terms. *Id.* Ambiguity is not established by the mere

existence of a controversy or by the parties' differing interpretations of the contract terms.  *Id.*

      B.    *Relationship of Sole Proprietorship to Proprietor*

The defining feature of any sole proprietorship as a business entity is its identity with its proprietor.  A sole proprietorship is "[a] business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity."  Black's Law Dictionary 1398 (7th ed. 1999).  Accordingly, a judgment entered against a sole proprietorship may be executed against the personal property of the owner:

> The primary disadvantage of a sole proprietorship is that the sole proprietor is personally liable for all business debts and obligations. The sole proprietor is liable for all contractual debts and for all tort liabilities incurred by the sole proprietor, employees, and other agents in the conduct of the business.  Insurance policies can protect a sole proprietor to some degree, but liabilities in excess of insurance proceeds may be satisfied from the sole proprietor's own assets.

9 Mertens Law of Federal Income Taxation § 35A:05 (Comparison With Other Entities – Sole Proprietorship) (2005).  A sole proprietor is generally taxed as an individual, and the sole proprietorship has no continuity of existence beyond the life of the proprietor.  See 17 Indiana Practice Series, Business Organizations § 1.4 (1991).

Relying on these basic principles, most courts addressing the insurance coverage issue where a sole proprietor owns a vehicle involved in an accident have

treated the sole proprietorship as legally indistinguishable from its proprietor and have therefore held that standard non-owned auto exceptions of business liability policies did not apply to the vehicle owned by the proprietor.

For example, in *CU Lloyd's of Texas v. Hatfield*, 126 S.W.3d 679 (Tex. App. 2004), the Texas Court of Appeals reached this conclusion in an insurance coverage case with facts parallel to the facts here.  In *Hatfield*, a teenage driver caused an accident that seriously injured the passenger in his car.  *Id.* at 680. The car was owned by the driver's father.  *Id.*  The trial court found that the driver was acting in the course and scope of his father's business, a sole proprietorship, at the time of the accident.  *Id.* at 681.

CU Lloyd's of Texas provided commercial general liability insurance for the father's business at the time of the accident.  *Id.*  Like the State Farm Business Policy at issue here, the policy generally excluded coverage for damages arising from the use of automobiles, including those owned by the insured, but it also contained a non-owned auto exception to that exclusion that referred to the named insured.  *Id.* at 683.

CU Lloyd's sought a declaratory judgment that it owed no duty to defend or indemnify under the business liability policy.  The trial court granted summary judgment for the injured party, finding that the policy covered the accident.  The appellate court reversed.   It relied on the standard definition of a sole

proprietorship and treated the insured sole proprietorship and its proprietor, the vehicle's owner, as legally the same person.   *Id.* at 684-85.   Most courts addressing this issue in reported decisions have reached the same conclusion. See, *e.g.*, *Providence Washington Ins. Co. v. Valley Forge Ins. Co.*, 50 Cal. Rptr. 2d 192, 199 (Cal. App. 1996) (concluding sole proprietorship had no existence apart from owner and excluding business liability coverage for auto titled to owner); *Allstate Ins. Co. v. Willison,* 885 P.2d 342, 344 (Colo. App. 1994) (holding vehicle did not fall within non-owned auto exception because appellee owned vehicle under sole proprietorship's name); *Hall v. Auto-Owners Ins.* Co., 658 N.W.2d 711, 716-17 (Neb. 2003) (concluding sole proprietorship was not separate legal entity from proprietor and excluding business liability coverage for auto owned by proprietor); *Recalde v. ITT Hartford*, 492 S.E.2d 435, 437-38 (Va. 1997) (answering certified question by concluding sole proprietorship is not legally distinct from proprietor for purposes of business liability policy's auto exclusion).

Although these cases differ in some minor respects from the case now before the court, they are instructive for predicting how Indiana courts would approach this issue.   The courts did not reach their conclusions by relying on state-specific rules of construction for interpreting insurance contracts.   Rather, they focused on the universally recognized characteristics of a sole proprietorship.   See, *e.g.*, *Recalde*, 492 S.E.2d at 437 ("We are of the opinion that the certified question should be answered in the negative because of the definition and nature of a sole proprietorship.").   Indiana courts would likely follow the same analysis and

conclude that a sole proprietorship and its owner should be considered the same legal entity for purposes of applying the non-owned auto exception of a business liability policy.

Applying this principle here, the vehicle driven by Aaron Miller does not fall within the non-owned auto exception, and the Business Policy does not provide coverage for Plaintiffs' claims.  The Business Policy insured Dr. Miller's medical practice.  Its non-owned auto exception provided coverage only for vehicles not owned by the Named Insured, which is Dr. Miller.  The vehicle involved in the accident with Dr. Bledsoe was titled to Dr. Miller.  Dr. Miller's medical practice is legally indistinguishable from Dr. Miller, so the vehicle should be considered as one owned by the Named Insured, Dr. Miller.  The Business Liability Exclusion and Medical Payments Exclusion thus apply to exclude coverage for plaintiffs' claims.

To argue that Indiana courts would treat sole proprietors and their businesses as separate legal entities for purposes of this insurance coverage dispute, plaintiffs rely on two criminal cases, *McKinley v. State*, 400 N.E.2d 1378 (Ind. 1980), and *Pagan v. State*, 809 N.E.2d 915 (Ind. App. 2004).  In *McKinley*, the Indiana Supreme Court upheld a defendant's convictions for two counts of armed robbery.  The defendant had taken money from a pharmacy's cash register and then taken the wallet and wristwatch of its sole proprietor.  400 N.E.2d at 1378-

79.  The court concluded that these two takings did not fall within the "single larceny doctrine" and therefore separate convictions were proper.  *Id.* at 1379.

In *Pagan*, the Indiana Court of Appeals considered a convicted defendant's claim that the state failed to prove robbery as alleged in the charging information. The defendant had robbed a video rental store by threatening the proprietor with a knife until she gave him money from the cash register and a moneybag under the counter.  809 N.E.2d at 918.  The video store was operated as a sole proprietorship.  The defendant was charged with robbery with a deadly weapon, which requires proof that the defendant took property from another person, or from the presence of another person, by using or threatening the use of force or by putting any person in fear, while armed with a deadly weapon.  The written charge was not phrased in terms of taking property from the presence of another person, but from a person, namely "Hardinsburg Video, owned by Judy McIntyre." *Id.* at 918-19.  The defendant argued that the state failed to prove that Hardinsburg Video was a "person" that could be robbed because the Indiana criminal code did not expressly define "person" to include sole proprietorships. Relying on the *McKinley* decision and, in the alternative, the definition of a sole proprietorship, the appellate court concluded that a sole proprietorship could qualify as a "person" under the statute and affirmed the conviction.  *Id.* at 919.

Plaintiffs' reliance on these cases is not persuasive.  Neither *McKinley* nor *Pagan* required the court to recognize any separate legal status for a sole

proprietorship.  In *McKinley*, the court viewed the robbery incident practically as two separate episodes.  It noted that the defendant first stole money from the cash register, but his actions "took on a different character" when he ordered the store owner to turn over his wallet and wristwatch and kicked him in the face.  400 N.E.2d at 1379.  In upholding the two convictions, the court did not rely on any notion that two separate entities owned the stolen items.  In fact, the court expressly noted that the rule it applied did *not* require "that the business entity be a separate 'person' as is a corporation or partnership."  *Id.*  Rather, the court merely concluded that the defendant's actions had caused different types of injuries to a single individual.  See *id.* (defendant "wronged an individual by robbing both that individual and that individual's business.").

The *Pagan* court cited *McKinley* for the proposition that a sole proprietorship could be a crime victim, separate and distinct from its owner.  809 N.E.2d at 919.  This limited distinction, however, stems from *McKinley*'s recognition only that a single business owner may suffer from a robbery in two different capacities.  There is no indication that the *Pagan* court subscribed to the broader conclusion argued by plaintiffs here, that a sole proprietorship and its proprietor should be treated as different legal entities.  In fact, the *Pagan* court provided an alternative rationale for its decision that relied on the universally recognized status of a sole proprietorship as *not* legally distinct from its owner:

> We note in the alternative that the definition of "sole proprietorship" is "[a] business in which one person owns all the assets, owes all the liabilities, and operates in his or her own personal capacity."  Black's

Law Dictionary 1398 (7th ed. 1999).  Under this definition, it is clear that stealing property from a sole proprietorship business is tantamount to stealing from the individual owner of the business, who necessarily owns all of the business' property.  This is so even if, under *McKinley*, it is possible to be convicted of two separate counts of robbery if a defendant forcibly takes both clearly identifiable "business" property and "individual" property.  Here, the only property Pagan took was clearly identifiable with the Hardinsburg Video business.  As such, we conclude that although the State was only entitled to charge Pagan with one count of robbery, it could allege and prove the taking of property from the "person" of Hardinsburg Video, which property was also necessarily the property of Jody McIntyre, a human being.

809 N.E.2d at 919.  This reasoning provides additional support for the view that Indiana courts view sole proprietorships as legally indistinguishable from their owners.

*Pagan* thus does not support plaintiffs' attempt to distinguish between Dr. Miller the doctor and Dr. Miller the person.  Although the scope of the reasoning in *McKinley* is not clear, it does lend some arguable support to plaintiffs' view.  In a diversity jurisdiction case governed by state law, however, this court's responsibility is to use its best judgment about how the Indiana Supreme Court would decide the specific issue if it were presented today.  *E.g.*, *Klunk v. County of St. Joseph*, 170 F.3d 772, 777 (7th Cir. 1999).  The basic principles of sole proprietorship as a form of business organization are well established and thoroughly entrenched in Indiana civil law governing a host of issues, from contracts and torts to property ownership.  *McKinley* presented an unusual issue in the context of a serious crime marked by gratuitous violence against the business owner.  There is no suggestion in the court's brief opinion that it was

calling into question for any other purpose the well established identity between a sole proprietor and his or her business.  Accordingly, this court predicts that the Indiana Supreme Court would, if presented with the issue in this case, treat Dr. Miller as legally indistinguishable from his medical practice.

Plaintiffs cite only one case in which a court treated a sole proprietorship separately from its proprietor for purposes of interpreting the automobile damages provision of a business liability policy.  In *Hertz Corp. v. Ashbaugh*, 607 P.2d 1173 (N.M. App. 1980), the New Mexico Court of Appeals upheld a trial court's determination that a personal vehicle owned by a sole proprietor was not also owned by the "named insured" under the terms of the sole proprietorship's business liability policy.  The trial court had found that the parties to the policy did not intend the policy to cover the personal driving or activities of the individual proprietor.  Reviewing this finding for substantial evidence, the Court of Appeals affirmed.  The court wrote that it was not unreasonable to construe the "named insured" to mean only the sole proprietorship and not the owner individually.  *Id.* at 1176.

The *Ashbaugh* decision has been criticized by other courts that have addressed this insurance coverage issue.  See, *e.g.*, *Willison*, 50 Cal. Rptr. 2d at 196 ("*Ashbaugh* is inattentive to the force of the principle that a trade name does not create a separate entity and wrongly relies on cases finding individual partners distinct from the insured partnership.");  *Recalde*, 492 S.E.2d at 439 (stating

*Ashbaugh* "relied upon an inapposite case involving insurance issued to a partnership."). This court agrees that the *Ashbaugh* court did not try to fit its analysis or decision into the broader sweep of business organization law and the established characteristics of a sole proprietorship. Instead, the court relied on case law that addressed only the relationship between partners and partnerships. The court failed to consider that the same principles would not apply to a sole proprietorship. Accordingly, this court believes the Indiana Supreme Court would not adopt the reasoning of *Ashbaugh.*

The great weight of case law and this court's conclusion in this case also are consistent with the fundamental purpose of the non-owned auto exception. Business liability policies generally exclude coverage for damages resulting from automobile accidents. That substantial additional risk must ordinarily be covered by a separate policy. The general business liability policy uses the non-owned auto exception, however, to provide coverage in those limited situations where the policy owner does not have the ability to plan for the risk by purchasing a separate automobile policy. That is, the non-owned auto exception protects the policyholder from liability that can occur when other persons use their own vehicles in furtherance of the insured's business. That rationale does not apply to vehicles owned by the named insured, who is obviously in a position to purchase applicable insurance coverage, as Dr. Miller did in this case when he purchased the policy that has actually covered this loss and has paid the Bledsoes.

C.     *Mrs. Miller's Co-Ownership of the Vehicle*

Plaintiffs point out that the vehicle driven by Aaron Miller was titled to both Dr. Miller and Mrs. Miller.  Because Dr. Miller was not the only owner of the vehicle, plaintiffs contend that the vehicle must be considered a "non-owned auto" with respect to his medical practice.  The element of joint ownership in this case does not mandate a different result.

Under the language of the Business Policy, the relevant issue is whether the Named Insured owned the vehicle in question, not whether any other person besides the Named Insured also shared in ownership of that vehicle.  This distinction is conveyed through the Business Policy's definition of "non-owned auto" as "any auto you do not own, lease, hire, or borrow which is used in connection with your business."  The word "you" represents the Named Insured, Dr. Miller.  The Business Policy's use of the word "own" in the definition of "non-owned auto" is broad enough to encompass different types of ownership, including co-ownership.  Even though Dr. Miller was not the sole owner of the vehicle, his ownership still bars application of the non-owned auto exception.[1]

---

[1]The State Farm Business Policy does not contain the more specific language in the relevant non-owned auto exception in *Hall*, which excluded liability for vehicles "owned in whole or in part by the named insured."  See *Hall*, 658 N.W.2d at 722.  The broad term "own" in the State Farm policy is sufficient to apply to ownership both in whole and in part.  *Recalde* also involved a jointly-owned vehicle, and the court concluded that the vehicle did not fall within a non-owned auto exception identical to the one here.  See 492 S.E.2d at 504.

Plaintiffs attempt to buttress their argument with one other imaginative argument. Indiana Code § 25-22.5-8-1 bars persons without a physician's license from the practice of medicine. Indiana Code § 25-22.5-1-1.1 defines the practice of medicine to include "maintenance of an office or a place of business for the reception, examination, or treatment of persons suffering from disease. . . ." Because Mrs. Miller is not a licensed physician, she may not lawfully maintain a medical practice. From these premises, plaintiffs stretch to the conclusions that Mrs. Miller would violate Indiana law if she owned a vehicle also owned by Dr. Miller's medical practice, and that Dr. Miller's medical practice therefore should not be deemed an owner of the vehicle driven by Aaron Miller.

The conclusions obviously do not follow from the premises. First, plaintiffs have offered no reason to believe that joint ownership of a vehicle used in the medical practice (as well as for other purposes) would be deemed the "practice of medicine" under Indiana law. Second, the defendant's point, and the point made by the great weight of case law, is simply that Dr. Miller owned the vehicle in question because there is no legal distinction between Dr. Miller and his sole proprietorship. Because Dr. Miller owned the vehicle in question, it was not a "non-owned auto" under the Business Policy insuring his practice. This reasoning and holding do not require the court to reach any conclusions regarding Mrs. Miller and the relationship between her property and the property owned by Dr. Miller's medical practice.

D.     *Ambiguity?*

To support a finding of coverage, plaintiffs have also argued that the non-owned auto exception is ambiguous and that it should be construed in favor of coverage.  Plaintiffs argue that the Business Liability Exclusion's use of the term "insured," encompassing both Dr. and Mrs. Miller, combined with the non-owned auto exception's reference to the "Named Insured," designated as Dr. Miller only, creates ambiguity.  Plaintiffs contend that Indiana rules of construction in insurance coverage cases require that ambiguous policy terms be interpreted against the insurer.  State Farm contends that Indiana courts interpret ambiguous policy terms neutrally in disputes between insurers and persons who are not their insureds.

There is some tension in the Indiana case law concerning the consequences of a finding of ambiguity in cases between insurers and third-parties.  Compare *Indiana Lumbermens Mutual Ins. Co. v. Statesman Ins. Co.*, 291 N.E.2d 897, 899 (Ind. 1973) (in a coverage dispute between two insurers, court would "seek out the general intent of the contract from a neutral stance"), and *Earl v. American States Preferred Ins. Co.*, 744 N.E.2d 1025, 1027 (Ind. App. 2001) (intent is determined from a neutral stance in disputes between third parties and insurers), with *American Family Mutual Ins. Co. v. Ginther*, 803 N.E.2d 224, 232 (Ind. App. 2004) (construing insurance contract ambiguity in favor of coverage for benefit of accident victims where insured tortfeasor was not party to case); *American Family Mutual Ins. Co. v. Hall*, 764 N.E.2d 780, 784 (Ind. App. 2002) (same).  The *Earl*

case cited *Burkett v. American Family Ins. Group*, 737 N.E.2d 447, 452-53 (Ind. App. 2000), which expressly addressed the conflicting lines of authority and concluded that the rule that ambiguities should be interpreted in favor of coverage should not apply when the insured tortfeasor was not a party to the case. That conclusion was dicta, however, because the *Burkett* court found no ambiguity. Also, whether the insured tortfeasor is or is not a party to the coverage litigation may be a matter of happenstance and the vagaries of procedural maneuvers in the litigation. To this court, it seems unlikely that the proper interpretation of a contract should depend on the presence, absence, or alignment of particular parties in the litigation.

The court need not resolve this tension in this case, however, because plaintiffs have not demonstrated any ambiguity. The Business Liability Exclusion bars coverage for damages caused by others using an auto owned by "any insured." On its face, this language excludes coverage for the vehicle owned by Dr. and Mrs. Miller, since each is considered an "insured" under the policy. The sole issue, then, is whether the vehicle falls within the non-owned auto exception. Since "non-owned auto" is defined as "any auto you do not own," and "you" refers to the Named Insured Dr. Miller, the decisive question is whether Dr. Miller owned the vehicle in the accident. Answering this question does not require resolving an ambiguity, but only determining whether Indiana law regards Dr. Miller as the same legal entity as his medical practice. As discussed above, this court concludes that it does.

No other aspect of the non-owned auto exception is ambiguous.  In *Indiana Insurance Co. v. O.K. Transport, Inc.*, the court addressed whether an insurance policy covered an accident involving a corporate employee driving a truck owned by a related partnership.  587 N.E.2d 129 (Ind. App. 1992).  The named insured provision listed the names of both the corporation and the partnership.  *Id.* at 130.  However, it was unclear whether the parties intended to treat them as a single entity or as separate entities for insurance purposes.  *Id.* at 131-32. Because this ambiguity prevented the court from applying the non-owned auto provision, the court applied the relevant rules of construction and interpreted the provision in favor of the insured.  This case differs from *O.K. Transport* because the undisputed facts show that Dr. Thomas Miller was the only Named Insured. The court need not look any further than that provision in applying the non-owned auto exception.

Finally, plaintiffs argue that the opposite conclusion reached by the New Mexico Court of Appeals in *Ashbaugh* shows that the non-owned auto exception must be ambiguous as applied to a vehicle owned by a sole proprietor.  The law does not create such a one-way ratchet, under which a clause would have to be deemed ambiguous if any published (or perhaps unpublished and unappealed?) decision by any court of record in the United States disagrees with another court's interpretation of a particular insurance clause as applied to a particular set of facts.  Indiana courts have rejected such contentions before.  Indiana courts do not view varying court interpretations of a contractual term as conclusive evidence

that the term is ambiguous.  See *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 295 (Ind. App. 1997) (acknowledging that some courts regard difference of opinion as conclusively establishing ambiguity while others regard it only as evidence of ambiguity, and choosing the latter view).  In this case, the clear policy language, the great weight of authority interpreting very similar policy provisions, and the weakness of the analysis in *Ashbaugh* show there is no ambiguity.

V.     *Conclusion*

For the reasons stated, defendant's motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied.  Final judgment shall be entered in favor of defendant.

So ordered.

Date: October 7, 2005

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

-22-

Copies to:

Christopher J. Braun
PLEWS SHADLEY RACHER & BRAUN
cbraun@psrb.com

Donna C. Marron
PLEWS SHADLEY RACHER & BRAUN
dmarron@psrb.com

Tina M. Richards
PLEWS SHADLEY RACHER & BRAUN
trichards@psrb.com

Dennis F. Cantrell
BINGHAM MCHALE, LLP
dcantrell@binghammchale.com

Daniel J. Gerritzen
BINGHAM MCHALE, LLP
dgerritzen@binghammchale.com